FILED

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHWESTERN DIVISION

97 MAY 13  AM 9: 59

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | | |
|---|---|---|
| VERNELL THOMAS, | ) | |
| Plaintiff, | ) | |
| vs. | ) | CV 96-L-2242-NW |
| STONE & WEBSTER ENGINEERING CORPORATION, a corporation; METROPOLITAN LIFE INSURANCE COMPANY; EARLINE THOMAS; BARBARA CHAPMAN; BARBARA CHAPMAN, as personal representative of the estate of Robert Lee Thomas, deceased; CHRISTOPHER LEON THOMAS; CHRISTINA THOMAS, a minor; DAREZ DAVIS, a minor, | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**ENTERED**

**MAY 1 3 1997**

### FINDINGS OF FACT
### AND
### CONCLUSIONS OF LAW

This cause came on for trial before this court, without
the intervention of a jury, on May 7, 1997 upon the pleadings, the
order of pretrial conference, the evidence and exhibits, and the
arguments of counsel.  The court enters the following findings of
fact and conclusions of law:

1



## Findings of Fact

1.    Robert L. Thomas ("Thomas") was hired by Stone & Webster Engineering Corporation ("Stone & Webster") on February 17, 1992.

2.    On April 3, 1992, Thomas signed a Group Insurance Election Form, in which he chose Group Life Insurance Plan, Option III and waived health, dental, and long term disability insurance.

3.    On February 20, 1995, Thomas was diagnosed as having lung cancer and brain cancer which caused intracranial bleeding.   He began chemotherapy and radiation treatment.

4.    Thomas became disabled on November 3, 1994.  On February 16, 1995, Stone & Webster sent Thomas a letter informing him that it was company policy to terminate any employee who had been absent from work for 180 consecutive days following the date of disability.   Thus Thomas was due to be terminated as of May 1, 1995.   He returned to work April 24, 1995 and remained until May 10, 1995, at which time he became eligible to begin drawing further short-term disability benefits.   On September 7, 1995, Stone & Webster sent Thomas another letter stating that he was due to be terminated as of November 5, 1995 because he had been absent from work for 180 consecutive days.   Thomas did not return to work, and thus he was terminated on November 5, 1995.

5.    The Stone & Webster policy issued by Metropolitan Life Insurance Company ("Met Life") provides that life benefits end on the date that employment ends. A personal policy of life insurance will be issued if applied for in writing during the Application Period.   The Application Period is the period beginning on the date

2

that employment ends and ending thirty-one days later.  However, if written notice of the "Right to Obtain a Personal Policy of Life Insurance on Your Own Life" is not given within fifteen days before or after the first day of the Application Period, then the Application Period is extended.  In no event may one apply later than the ninetieth day after the first day of the Application Period.

6.    The Stone & Webster policy issued by Met Life provides that if the insured dies during the Application Period, Met Life will pay a death benefit equal to the amount of life benefits on the date life benefits end.

7.    The Schedule of Benefits attached to the policy of insurance issued to Stone & Webster by Met Life provides that life benefits under Option III are three times salary, with a maximum payment of $300,000.  On the date of Thomas' termination, November 5, 1995, his salary was $1010 per week, or $52,520 per year.  Thus as of the date life benefits ended, the amount of life benefits was $157,560.  The life benefits are paid by Met Life.

8.    On November 14, 1995, Stone & Webster sent Thomas via first-class mail notice of his right to obtain a personal policy of life insurance.  Both prior to and after this notice was sent, paychecks were sent to Thomas via first-class mail at the same address and were endorsed by Thomas.

9.    The Stone & Webster policy issued by Met Life provides that the insured must make a written designation of a beneficiary who is to receive the life benefits.  If there is no beneficiary,

3

the benefits will be paid to the insured's estate or may instead be paid to one or more of the following people: spouse, child, parent, brother, or sister.

10. On September 24, 1995, Thomas designated his mother Earline Thomas and his sister Barbara Chapman as beneficiaries of his group life insurance. Prior to that time, Thomas had not executed a beneficiary designation for the group life insurance.

11. Thomas died February 12, 1996. He was survived by his wife (Vernell Thomas), three children (Christopher Leon Thomas, Christina Lauren Thomas, and Darez Davis), his sister (Barbara Chapman), and his mother (Earline Thomas).

12. The Stone & Webster policy issued by Met Life provides that claims are submitted to Stone & Webster, who certifies that there was insurance under the plan. If a claim is denied, Met Life can be asked to review the denial.

13. Claims for the life insurance benefits were made by Christopher L. Thomas, Earline Thomas, Barbara Chapman, Vernell Thomas, Darez Davis, and Christina Lauren Thomas. Stone & Webster denied these claims on the grounds that Thomas never made an application for personal life insurance within the applicable time. Met Life was never asked to review this denial.

14. The Stone & Webster policy issued by Met Life gives the plan administrator and other plan fiduciaries the discretionary authority to interpret the terms of the plan and to determine eligibility for and entitlement to plan benefits in accordance with the terms of the plan.

4

## Conclusions of Law

1.     This court has jurisdiction of this action and of the parties thereto.

2.     The Stone & Webster life insurance plan is an employee welfare benefit plan maintained by Stone & Webster for the purpose of providing participants with death benefits.     29 U.S.C. § 1002(1).  This employee welfare benefit plan is also an employee benefit plan, 29 U.S.C. § 1002(3), and as such it is subject to the provisions found in the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 et seq.

3.     Stone & Webster's determination will not be overturned unless it is found to have been made in an arbitrary and capricious manner.   Firestone Tire and Rubber Company v. Bruch, 489 U.S. 101 (1989).

4.     Thomas' date of termination was November 5, 1995.  Within fifteen days of this date of termination, Stone & Webster mailed to Thomas notice of his right to obtain a personal policy of life insurance.  The fact that Thomas received paychecks mailed to the same address as the notice leads this court to the inevitable conclusion that Thomas received the notice which was mailed to him. There is no medical evidence that Thomas was incapable of understanding the notice which he was given.    Thus Thomas had thirty-one days--until December 6, 1995--to apply for the personal policy of life insurance.  Thomas did not do so, and no personal policy of life insurance existed with Met Life when Thomas died.

5.     Even if Thomas had not received the requisite written

5

notice, a ninety-day application period would have ended February 3, 1996. Thomas made no application before February 3, 1996, and he died after February 3, 1996. Thus no personal policy of life insurance existed with Met Life when Thomas died.

6. Stone & Webster was not arbitrary and capricious when it determined that no personal policy of life insurance existed between Thomas and Met Life. Thus no benefits are due under the terms of the plan.

7. A formal judgment will be entered separately.

DONE this 12th day of May 1997.

SENIOR JUDGE

6